NEAL *v.* WIDEMAN.

Opinion delivered March 31, 1894.

1. *Overdue tax sale—Fraud.*

Where the State made a donation of land which had forfeited for the taxes of a certain year, and the donee made the required payments and improvements, a subsequent purchase of the land by the State at overdue tax sale for the same taxes is fraudulent; and one who purchases the land from the State with knowledge of the previous donation is affected by the fraud.

2. *Ejectment—Equitable defense.*

The defendant in an action of ejectment to recover land may, under the code, take advantage of the fraud of the plaintiff and his grantor by answer and cross-complaint, and have the action transferred to the equity docket.

3. *Judicial sale—Confirmation.*

A sale to the State at an overdue tax sale, if unconfirmed, passed no title.

Appeal from Cleburne Circuit Court.

JOSEPH W. MARTIN, Judge.

The appellant *pro se.*

1. The forfeiture to the State being legal, there could be no subsequent forfeiture or sale for taxes. 31 Ark. 245.

2. An after-acquired title by the State passed to her grantee. Mansf. Dig. sec. 652; 33 Ark. 251; 15 *id.* 73.

3. In this case there were no overdue or back taxes. Freem. Judg. 125, and cases cited; 21 Ark. 145.

4. No one is bound by any judicial proceeding to which he is not a party, and he cannot be made a party unless an opportunity has been offered of defending himself. 2 Ark. 60; *ib.* 390.

5. No title passed to the State until the sale was confirmed. 53 Ark. 448.

6. The last forfeiture and proceeding was a *fraud* upon appellant.

BATTLE, J. On the 29th of January, 1889, J. W. Wideman commenced this action against James M. Neal for the recovery of a tract of land described in his complaint. He derived his title from a sale of the land for the taxes of 1876 under a decree rendered by the Cleburne circuit court, in the exercise of the jurisdiction conferred upon it by the "Overdue Tax Law." At that sale the land was stricken off to the State, there being no bidders for it; and, no redemption having been

effected within the time prescribed by law, the State Land Commissioner sold and conveyed it to the plaintiff.

The defendant claimed under a donation from the State. In support of his title he alleged that the land was duly assessed, and legally returned delinquent, advertised, and sold, for the taxes of 1876, to the State of Arkansas ; and, not having been redeemed within the time allowed by law, it was certified by the county clerk to the Commissioner of State Lands as forfeited ; that, afterwards, on the 18th of November, 1881, the Commissioner of State Lands issued to him, on his application, a certificate of donation ; that he then took possession thereof, and has occupied and improved it ever since ; and that, on the 22d of December, 1882, after he had made payments, and filed proof of improvements, as required by law, the Commissioner conveyed the land to him. He alleged that, after the land was conveyed to him, the Cleburne circuit court ordered the land sold under the "Overdue Tax Law"; that it was sold to the State under that decree on the 29th of December, 1884, more than two years after it had been donated to him ; that this sale had never been confirmed by the court ; and that the plaintiff purchased the land about the 28th of December, 1888, from the State. He averred, in a vague manner, that the plaintiff purchased the land of the State, well knowing that it had been previously donated to him, the State having acquired the right to do so by the forfeiture of the same for the taxes of 1876. He made his answer a cross-complaint, and asked that the action be transferred to the equity docket, and that the deed of plaintiff be cancelled, his title quieted ; and for other relief.

The answer and cross-complaint were held by the court below, upon a general demurrer, to be insufficient ; and, the defendant declining to plead further, a final judgment was rendered in favor of the plaintiff.

The defendant, in effect, attacked the title of plaintiff on the ground that the decree of the Cleburne circuit court, under which the land was sold to the State, was procured by fraud, and that the plaintiff purchased with notice of that fact. Will equity interfere?

1. When overdue tax-sale voidable for fraud.

Courts of equity can set aside judgments and decrees obtained by fraud. The fraud for which they will set them aside must be in the procurement of the judgment or decree. A fraud which vitiates the cause of action is a defense which, nothing preventing, must be interposed in the action in which the judgment or decree was rendered. It cannot be asserted against the judgment, in the absence of other grounds of equitable interposition.

A few cases will serve to illustrate the application of the rule which governs courts of equity in setting aside judgments obtained by fraud. Where the parties submitted the matter in dispute to arbitration, after the suit was instituted, and the award was that the defendant should pay a certain sum and the costs of suit, and he performed the award by giving his note for the debt, as ascertained by the arbitrators, with security, but failed to pay the costs, and the plaintiff took judgment for the whole debt sued for, without the knowledge or consent of the defendant, equity annulled the judgment for the debt. *Sneed* v. *Town*, 9 Ark. 535. A judgment was set aside for fraud, which was obtained in a suit before a justice of the peace after he had announced to the parties that he was sick, and would not try the cause until the following morning, and the plaintiff had left the place of trial on account of the announcement. In that case the defendant immediately returned to the office of the justice of the peace, and filed before him for the first time a set-off in excess of the claim sued on, and, in the absence of the plaintiff, induced the justice to

render the judgment in his favor for the excess, when there was nothing due him. *Miles* v. *Jones*, 28 Mo. 87. "An action was commenced against A and others. A having a good defense, the plaintiff agreed to dismiss as to him, and on that account A failed to defend. The judgment taken in violation of this agreement was set aside, and the execution restrained. Similar action was taken where the defendant was assured that he was sued *pro forma*, because he was supposed to be a necessary party, and that no judgment ' would be taken against him; and a decree was nevertheless taken against defendant; and so when, after the commencement of a suit, an accord and satisfaction had taken place between the parties, and upon that account the defendant failed to appear and plead; or where the plaintiff, after an interview with defendant, admitted that he had been paid, and promised to go at once and dismiss the action, and assured defendant that he need not employ an attorney, or pay any further attention to the action; * * * or agreed that if defendants would withdraw an equitable plea, he would do the equity set up in the plea; or had accepted a certain sum as a satisfaction of his demand, and given a receipt in full." 2 Freeman on Judgments (4th ed.), sec. 492.

In *Johnson* v. *Coleman*, 23 Wis. 452, plaintiff alleged that her husband had instituted an action against her for a divorce on the ground of desertion on her part, continued for more than one year; that he commenced the suit, and obtained an order of publication, upon the ground that he was unable to ascertain her residence, when he well knew where she was residing at the time; "that no copy of the summons and complaint was served upon her personally, nor by depositing the same in the post office, directed to her; that judgment by default was rendered against her upon such service"; that she had no knowledge of the suit until after a lapse of more

than two years from the time the judgment for divorce was entered; and that the separation was voluntary under written articles entered into by her and her hus- band—and asked that the judgment be set aside. Upon demurrer to the complaint the court held that the alle- gations of the wife showed such fraud in the procure- ment of the divorce as authorized the setting aside the judgment.

In *Moore* v. *Gamble*, 9 N. J. Eq. 246, ''a judgment was obtained by attachment, during the defendant's ab- sence, for a sum claimed to be due for the board of his wife. Relief was obtained by the defendant, upon show- ing that it was the duty of the plaintiff, under an agree- ment, to furnish such board, and that he, at the time the suit was commenced, had funds of defendant in his hands'' to an amount more than large enough to pay the wife's board.

In *Johnson* v. *Coleman* and *Moore* v. *Gamble* the judgments were set aside because they were obtained in the absence of the plaintiffs on causes of action known to be without foundations, and the plaintiffs had no opportunity of being heard, or setting up the defenses they had against the defendant's demands, holding that the judgments obtained under these circumstances were procured by fraud. *Irvine* v. *Leyh* (Mo.), 14 S. W. Rep. 715.

In the case before us, if the matters stated in the answer and cross-complaint are true—and upon demur- rer to the same we assume they are—it is evident that the decree of the Cleburne circuit court, under which the land in controversy was sold, was obtained by fraud. The State of Arkansas had conveyed all her interest in the land to the plaintiff, and relinquished to him her right to the taxes for which it was forfeited, in the event he was dispossessed. Mansfield's Digest, sec. 2649. The State knew, or ought to have known, that she had

no cause of action against the land on account of the non-payment of the taxes of 1876 at the time the decree was rendered. She impliedly said to the defendant, when she donated to him the land, that she would institute no proceedings against it on account of the taxes of 1876. He had the right to rely, and did rely, upon the good faith of the State in fulfilling the promises signified to him by her conduct. Every fear of proceedings to condemn the land to be sold to pay the taxes of 1876 were, doubtless, removed from his mind, and he was lulled into security. Under these circumstances the decree was obtained in a proceeding instituted, by authority, in the name and in behalf of the State. He was deprived of the opportunity of being heard, or setting up his defenses. A gross fraud was perpetrated upon him in the procurement of the decree, and, the plaintiff having purchased with notice of it, is not an innocent purchaser, and is affected by it; and the defendant is entitled to relief against it.

Under the civil code the defendant can take advantage of the fraud in this action by answer and cross-complaint. *Peel* v. *January*, 35 Ark. 331, 342.

2. Equitable defenses in ejectment.

As the sale under the decree of the Cleburne circuit court has never been confirmed, no title passed to the State thereby. *Neal* v. *Andrews*, 53 Ark. 445.

3. As to confirmation of judicial sale.

The demurrer to the answer and cross-complaint should have been overruled.

The judgment of the circuit court is, therefore, reversed, and the cause is remanded for proceedings consistent with this opinion.